<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

JENNY S.,[1]

    Plaintiff,

    v.

FRANK BISIGNANO,[2] COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 25cv1214 (EP)

**OPINION**

---

**PADIN, District Judge.**

Plaintiff, who suffers from myriad physical impairments, appeals the Social Security Administration's ("SSA") denial of disability insurance benefits ("DIB") pursuant to the Social Security Act (the "Act").[3] D.E. 1 ("Complaint"). For the reasons explained below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.[4]

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[3] 42 U.S.C. § 401-34.

[4] The Court decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I.      BACKGROUND

### A.      Plaintiff's DIB Application

Plaintiff initially filed a protective DIB application on August 13, 2015, alleging disability beginning August 7, 2015, due to, among other things, fibromyalgia, seronegative rheumatoid arthritis, Raynaud's syndrome, carpal tunnel syndrome, hearing loss with tinnitus, morbid obesity, cervical radiculopathy, and lumbar degenerative disc disease. *See* D.E. 4 ("Administrative Record", "Record", or "R.") 13, 362. The SSA initially denied the application on November 30, 2015, *id.* 91, and again upon reconsideration on June 7, 2016, *id.* 102. After Plaintiff requested a hearing, *id.* 152, and following several logistical issues surrounding the hearing, Administrative Law Judge Marguerite Toland (herein, the "ALJ") conducted a hearing on September 16, 2021 (herein, the "First Hearing"), *id.* 281. Following the First Hearing, on March 16, 2022, the ALJ denied Plaintiff's application. *Id.* 114-32.

Plaintiff filed an appeal to the Appeals Council on May 2, 2022. *Id.* 502-05. On February 3, 2023, the Appeals Council remanded this case back to the ALJ based on errors in the ALJ's March 16, 2022, decision. *Id.* 133-39. Plaintiff then appeared for another hearing before the ALJ on June 6, 2023 (herein, the "Second Hearing"). *Id.* 331. In a decision issued on March 18, 2024, the ALJ again denied Plaintiff's claim. *Id.* 7-25.

### B.      The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB, a claimant must show that she is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled. Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 7, 2015, her application date and amended onset date. R. 13.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

Here, the ALJ determined that Plaintiff had the following severe impairments: (1) fibromyalgia/seronegative rheumatoid arthritis, which affects her ankles, hands, and back; (2) Raynaud's syndrome; (3) carpal tunnel syndrome; (4) hearing loss with tinnitus; and (5) morbid obesity. R. 13.

3

At step three, the ALJ decides whether the plaintiff's impairments meet or equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1.[5]  20 C.F.R. § 404.1520(d).  If so, the plaintiff is presumed to be disabled if the impairments have lasted or are expected to last for a continuous period of at least twelve months. *Id.* § 404.1509.  Otherwise, the ALJ proceeds to step four.

Despite recognizing at step two that Plaintiff had multiple severe impairments, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings.  R. 13-14.  The ALJ specifically considered Listing 14.09 for inflammatory arthritis and Listing 1.18 for abnormality of a major joint in any extremity.  *Id.* 13-14.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and whether the plaintiff can perform past relevant work.   20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step five.  After considering the Record, the ALJ found that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) except for the following limitations: she cannot operate dangerous machinery (defined as machines that cut or shear).  She can only occasionally stoop.  She can perform no more than occasional overhead reaching with the left dominant arm.  She can perform no more than occasional kneeling.  She is limited to no more than frequent handling.  She would need to ambulate with a cane.  She should have no concentrated exposure to dust, fumes, pulmonary irritants or temperature extremes.  She would need a work environment having no more than a moderate noise level, with no loud background noise such as a warehouse or factory setting; however, an office setting could be tolerated.

---

[5] A "Listing" refers to an impairment on the Listing of Impairments.  As Defendant explains, "the listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose impairments are so severe that they are presumptively disabled."  20 C.F.R. § 404.1525(a).  Throughout this Opinion, the Court refers to all Listings by their listing numbers as provided in Appendix 1.

4

R. 14; *see id.* 14-18 (explaining the basis for this step four finding).  The ALJ also found that Plaintiff has no past relevant work.  *Id.* 18.

Finally, at step five, the ALJ must decide whether the plaintiff—considering the plaintiff's RFC, age, education, and work experience—can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  The ALJ determined that Plaintiff could perform the jobs of Document Preparer (DOT# 249.587-018) and Order Clerk (DOT# 209.567-014).  R. 18.  Accordingly, the ALJ found that Plaintiff was not disabled.  *Id.* 19.

### C.    Plaintiff's Appeal

Plaintiff appealed the ALJ's second decision to the SSA Appeals Council, which denied review on December 26, 2024.  R. 1-6.  Plaintiff then brought this action on February 12, 2025.  Compl.  Defendant filed the Administrative Record on April 17, 2025.  R. 5.  On May 14, 2025, Plaintiff filed her brief.  D.E. 7 ("Brief" or "Br.").  The Brief presents four issues for the Court:

- Does the Record document the satisfaction of Listing 14.09(B)[6]?

- Did the ALJ apply the correct standard when evaluating medical opinion evidence?

- Should the medical opinions of Plaintiff's treatment provider be given controlling weight?

- Is the correct remedy to remand solely to calculate benefits?

Br. at 1.  Defendant opposes.  D.E. 8 ("Opposition" or "Opp'n").  Plaintiff replies.  D.E. 9 ("Reply").

## II.    LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record.  The scope of that review is limited to determining whether the Commissioner applied

---

[6] As explained in more depth *infra*, Listing 14.09 is for inflammatory arthritis with inflammation or a deformity in one or more major joints of an upper or a lower extremity.

the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact. *See* 42 U.S.C. § 405(g) ("The findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive." (emphasis added)); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (district court has plenary review of all legal issues and reviews the ALJ's findings to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

If faced with conflicting evidence in the record, the Commissioner "must adequately explain . . . his reason for rejecting or discrediting competent evidence." *Kirby v. Comm'r of Soc. Sec.*, No. 16-5159, 2017 WL 4330361, at *5 (D.N.J. Sept. 29, 2017) (citations omitted). The Court must determine "whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision." *Dunster v. Dudek*, No. 24-469, 2025 WL 622333, at *4 (M.D. Pa. Feb. 26, 2025) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)). An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions with conclusory findings or which indicate the ALJ failed to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. The Court must also ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

Importantly, if a Court identifies an error in the ALJ's decision:

> courts are not limited to ordering a remand for further proceedings. Instead, "[w]hen reversing the [Administration]'s decision under 42 U.S.C. § 405(g), courts 'may choose to remand to the Secretary for a further hearing or simply . . . award benefits.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008) (quoting *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984)). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-22; *see also* [*Morales*, 225 F.3d at 320]. Remand for further hearings is appropriate when there is a factual dispute, *i.e.* when there is conflicting evidence and essential factual issues have not been resolved. [*See Fargnoli*, 247 F. 3d at 40].

*Imane M. v. Comm'r of Soc. Sec.*, No. 23-4560, 2024 WL 2091333, at *2 (D.N.J. May 9, 2024).

## III. REVIEW OF ALJ'S OPINION

Plaintiff challenges several components of the ALJ's determinations at step three. First, Plaintiff claims that her fibromyalgia is a listing level condition, and therefore, Plaintiff is disabled as a matter of law. To that end, she contends that the ALJ committed an error of law by only evaluating whether Plaintiff meets the elements of Listing 14.09(A) and not 14.09(B), the latter of which Plaintiff supposedly meets. Br. at 8-12. Next, Plaintiff argues that the ALJ's evaluation of medical opinion evidence was legally deficient because: (1) the ALJ did not follow the appropriate regulation, 20 C.F.R. § 416.927, which provides that the ALJ should have given controlling weight to the opinion of Plaintiff's medical provider; and (2) the ALJ rejected that medical opinion for the wrong reasons. Br. at 12-24.

Plaintiff urges the Court not to remand to the ALJ for further proceedings, but instead, to reverse the ALJ's decision and remand solely to calculate benefits. Plaintiff claims this is the appropriate next step because, among other reasons, the ALJ committed clear errors in her decision, the Appeals Council has already remanded this case back to the ALJ once, the ALJ did

not follow the guidance issued by the Appeals Council following remand, and the fact this case is over ten years old. *Id.* at 24-29.

As explained in more depth below, the Court agrees with Plaintiff that the ALJ erred at step three. However, the Court disagrees with Plaintiff regarding how this case should proceed, and therefore, will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.

### A. The ALJ's Determination That Plaintiff's Fibromyalgia Did Not Meet or Equal a Listed Impairment Was Not Supported by Substantial Evidence

"Fibromyalgia 'is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *Zavattaro v. Saul*, No. 18-3362, 2020 WL 6797138, at \*7 (D.N.J. Nov. 19, 2020) (quoting SSR 12-2p[7])). However, "there is no entry for fibromyalgia in the Social Security Administration's Listing of Impairments." *Adriano v. Saul*, No. 18-12854, 2020 WL 4382281, at \*8 (D.N.J. July 31, 2020) (citation omitted). Accordingly, the process for an ALJ finding that a claimant is disabled due to their fibromyalgia follows a slightly atypical process.

First, before an ALJ can find a claimant's fibromyalgia to meet or equal a Listing at step three, the ALJ must first determine at step two that the claimant's fibromyalgia is a severe impairment:

---

[7] Social Security Ruling ("SSR") 12-2p provides guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia.

> A claimant's fibromyalgia is a medically determinable impairment if it is diagnosed by a physician and meets either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. [*See* SSR 12-2p, 2012 WL 3104869, at *2]. The 1990 criteria require a claimant to show: (1) "[a] history of widespread pain"; (2) "[a]t least 11 positive tender points on physical examination"; and (3) "[e]vidence that other disorders could cause the symptoms or signs were excluded." [*Id.* at *2-3]. The 2010 criteria require a claimant to show: (1) "[a] history of widespread pain"; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

*Rebecca P. v. Comm'r of Soc. Sec.*, No. 21-6083, 2023 WL 2955839, at *2 (W.D.N.Y. Apr. 14, 2023). Once a claimant's fibromyalgia is found to be a severe impairment at step two, the ALJ at step three:

> considers whether it meets or medically equals any of the listed impairments that might apply—such as listing 14.09, the listing for inflammatory arthritis—because there is no specific listing for fibromyalgia. *See id.* at *6; 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant can show that her medically determinable impairment meets the criteria for inflammatory arthritis under listing 14.09 in any of four different ways. *See* [20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 14.09].
>
> First, she may show "[p]ersistent inflammation or persistent deformity of" (1) "[o]ne or more major peripheral weightbearing joints resulting in the inability to ambulate effectively"; or (2) "[o]ne or more peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively[.]" *Id.* at § 14.09(A).
>
> Second, she may show "[i]nflammation or deformity in one or more major peripheral joints with" (1) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity"; and (2) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." *Id.* at § 14.09(B).
>
> . . .

Fourth, she may show "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level" (1) "[l]imitation of activities of daily living"; (2) "[l]imitation in maintaining social functioning"; or (3) "[l]imitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." *Id.* at § 14.09(D).

*Rebecca P.*, 2023 WL 2955839, at *2-3.

As noted above, in this case, the ALJ found at step two that Plaintiff's "fibromyalgia/seronegative rheumatoid arthritis, affecting the ankle, hands and back," was a severe impairment. R. 13. Then, with respect to step three, Jeffrey Strutynski ("Plaintiff's Counsel") argued at the Second Hearing that Plaintiff's fibromyalgia might equal Listing 14.09 because:

> records document that [Plaintiff's] doctors will repeat inflammatory markers, that [Plaintiff] continues to report joint swelling and severe pain in multiple joints, that's at 10F, page 154 and 10F, page 164 . . . tenderness is also as my brief at 25E and 26E, swelling it the joints is also documented throughout the records. Malayized and fatigued is documented at 8F, page 33 and 34 and 10F, page 26, 13F, page 58 and I got a 13F, page 58.

R. 64. Nevertheless, following the Second Hearing, the ALJ found that:

> the medical evidence of record does not establish that listing 14.09 is met. Although the record at times documents a diagnosis of inflammatory arthritis (e.g. 6F; 8F:22-26), Dr. Atoot later stated that given the laboratory findings, a diagnosis of fibromyalgia is more appropriate and that the claimant may not have inflammatory arthritis (10F:164). The record similarly does not document the objective findings required by the listing. For example, there is no indication that the claimant ambulates with an assistive device or has difficulty effectively performing activities with the upper extremities (e.g. 3F:1-2). . . .
>
> Although there is no listing for fibromyalgia, under SSR12-2p this condition is evaluated under the criteria of listing 14.09. As noted above, the claimant's ability to ambulate and perform activities with upper extremities leads to the conclusion that this listing is not met.

R. 13-14.

Plaintiff argues that the ALJ committed an error of law because she only considered her physical impairments under 14.09(A) and not 14.09(B) when considering whether Plaintiff's

10

fibromyalgia meets or medically equals Listing 14.09.  In fact, Plaintiff asserts that the Record demonstrates that the medical evidence shows that her impairments meet or equal all the elements of Listing 14.09(B)(1) and (2).  Reply at 1-5.

The Court agrees with Plaintiff that the ALJ's reasoning as to why Listing 14.09 is not met is flawed because it does not address whether Plaintiff's fibromyalgia meets or equals any of Listing's 14.09 four subsections—which provide different ways to meet the Listing—besides 14.09(A).  The ALJ twice reasoned that Listing 14.09 was not met because there was no evidence that Plaintiff ambulates with an assisted device or has difficulty performing activities with her upper extremities.  R. 13-14.  But as Plaintiff pointed out in her brief in support of her appeal of the ALJ's decision to the Appeals Council, "[a]mbulation and upper extremity limitations play no part in evaluating listing 14.09(B)."  R. 514.  What's more, an inability to ambulate effectively is not germane to 14.09(C) or (D) either.  Thus, the rationale that the ALJ offers as to why Plaintiff's severe impairment of fibromyalgia does not meet or equal Listing 14.09 is not actually dispositive as to whether Plaintiff satisfied Listing 14.09 given that reasoning applies to only one of the Listing's four subsections.

Defendant argues that the ALJ was not required to use "particular language" when conducting her analysis at step three, and that her step three findings were sufficient because "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing."  Opp'n at 6 (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).  In the Court's view, Defendant misconstrues Plaintiff's argument.  Plaintiff is not asserting that the ALJ was required to use specific words when evaluating Listing 14.09, but rather, that the ALJ erred by not considering

11

Listing 14.09(B) *at all*.  Reply at 4.  After reviewing the ALJ's decision, it does not appear that the ALJ considered any part of Listing 14.09 aside from 14.09(A).

However, this Court has recognized that even when an ALJ fails "to expressly refer to Listing 14.09, this failure is not fatal to [her] decision 'as long as the ALJ's review of the record permits meaningful review of the step-three conclusions.'"  *Kuhl v. Saul*, No. 18-3337, 2020 WL 6537198, at *6 (D.N.J. Nov. 6, 2020) (quoting *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008)).  For example, in *Kuhl*, this Court excused an ALJ's failure to explicitly consider Listing 14.09 because the plaintiff "[did] not discuss, or even identify, the criteria for Listing 14.09, nor [did] she cite to any evidence in the record that satisfies such criteria," which meant that the plaintiff did not show "that the ALJ erred when finding that [her] impairments neither meet nor medically equal a listed impairment."  *Id.* at *6 (citing *Jones*, 364 F.3d at 505).  Plus, the ALJ in *Kuhl* provided at step four "a comprehensive review of the medical and record evidence relevant to Listing 14.09."  *Id.*

Following this caselaw, Defendant offers that even if the ALJ did not specify any particular listing in her decision, her step three finding was sufficient because "the evidence supports the ALJ's decision that the claimant's impairments did not meet or equal the criteria of a listed impairment and the ALJ's analysis shows that she considered the medical evidence as it relates to the listing requirements."  Opp'n at 6 (citing *Jones*, 364 F.3d at 505).

The Court disagrees with Defendant because here, and unlike in *Kuhn*, Plaintiff has extensively discussed Listing 14.09 throughout her briefs and at the Second Hearing, and the Record evidence does not support the ALJ's decision.  As noted above, Listing 14.09(B) is satisfied when a claimant has "inflammation or deformity in one or more major joints of an upper or a lower extremity" and either:  (1) involvement of two or more organs/body systems with one of the

organs/body systems involved to at least a moderate level of severity; *or* (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

The ALJ found that Plaintiff's fibromyalgia was a severe impairment that affected her ankle, hands, and back. R. 13. As Plaintiff correctly points out, the ALJ's conclusion seems to establish that Plaintiff had inflammation or a deformity in one or more major joints of an upper or a lower extremity: the only completely mandatory component of Listing 14.09(B).

The ALJ's other findings suggest that *four* of Plaintiff's organ/body systems have at least a moderate level of severity in satisfaction of 14.09(B)(1): Plaintiff's cardiovascular, hematologic, neurologic, and mental systems. Br. at 10-11 (citations omitted). The Court calls specific attention to two of these four. First, Plaintiff's cardiovascular system seems to be at least moderately impacted by her Raynaud's syndrome given the ALJ determination at step two that Plaintiff's Raynaud's was a severe condition. Br. at 10 (citing R. 13); *see id.* at 10 n.1 (noting that Listing 14.00(D)(6)(e)(iii), which explains how the SSA documents and evaluates listed autoimmune disorders, explicitly references Raynaud's as an extra-articular feature of inflammatory arthritis that affects the cardiovascular system). Second, Plaintiff's carpal tunnel syndrome—an impairment that affects the musculoskeletal system, *see Lombardi v. Astrue*, No. 08-4061, 2009 WL 3229763, at *9 (D.N.J. Sept. 29, 2009)—may at least moderately impact Plaintiff's musculoskeletal system given the ALJ's finding at step two that her carpal tunnel syndrome was also a severe condition. Thus, contrary to Defendant's assertion that that the Record supports the ALJ's decision, it appears that the ALJ's own findings suggest that Plaintiff could satisfy all of the elements of Listing 14.09(B)(1). Indeed, despite these explicit findings at step two, the ALJ fails to sufficiently articulate why Listing 14.09 is not met or equaled by Plaintiff's fibromyalgia either independently or in conjunction with her other impairments. Put another way, the ALJ's

13

conclusion that "the claimant's ability to ambulate and perform activities with upper extremities leads to the conclusion that [Listing 14.09] is not met" sits in tension with her other findings, and the ALJ does not adequately explain how to reconcile these differences.

Moreover, Plaintiff makes a colorable argument that she also satisfies the elements of 14.09(B)(2). To do so, she must, in addition to showing the same inflammation or deformity in an upper and lower extremity, establish at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) are documented in the record. 14.09(B)(2). In her brief, Plaintiff cites to seven places where the Record documents her malaise, Br. at 11 (citing R. 593, 602, 662, 734, 789, 922, and 1185),[8] and six places where her fatigue is indicated, *id.* (citing R. 525, 574, 788, 789, 922, and 1185). Plaintiff's Counsel also referenced Plaintiff's fatigue and malaise at the Second Hearing and even provided the ALJ with specific citations on the record. *See* R. 64. Nevertheless, there are no references to either fatigue or malaise in the ALJ's decision. Nor is there any mention of either constitutional symptom in Defendant's Opposition.[9] Accordingly, the Court agrees with Plaintiff that even when read as a whole, the ALJ does not evaluate "whether at least two constitutional symptoms or signs are documented in the record in satisfaction of listing 14.09(B)(2)." Reply at 4.

When confronted with a similar circumstance, a court recognized that it "is not a medical professional, and fibromyalgia is a condition that is difficult to define and appreciate." *Rebecca P.*, 2023 WL 2955839, at *4 (citing *Ortiz v. Astrue*, 875 F. Supp. 2d 251, 2563 (S.D.N.Y. 2012)

---

[8] At the same time, Plaintiff omits other citations in the Record which suggest her malaise symptoms were inconsistent. *See, e.g.*, R. 854 (noting that on a June 25, 2021, report, malaise and fatigue were both listed as negative under a review of her constitutional systems).

[9] Relatedly, Defendant makes little effort to grapple with Plaintiff's arguments regarding the elements of Listing 14.09(B)(1) or (2) in its Opposition. The only explicit mention of Listing 14.09 comes in the penultimate paragraph of Defendant's Opposition. *See* Opp'n at 10.

14

("As no objective tests can verify the existence of fibromyalgia, a diagnosis of the condition requires ongoing evaluation and monitoring of the patient's symptoms.")).  Therefore, "without some reasoned explanation as to why [Plaintiff's] fibromyalgia-related physical impairments did not meet or medically equal one of the listings . . . the Court [could not] perform the meaningful review that it is required to perform." *Id.*  This Court is also of the view that remand to the ALJ is warranted so that she can consider whether Plaintiff's fibromyalgia—either independently or in combination with her other impairments—meet or equal the criteria of Listing 14.09(B)(1) or (B)(2).  At a minimum, the ALJ should specifically evaluate whether her previous findings regarding Plaintiff's other severe impairments necessitate a finding that Plaintiff's impairments meet or equal Listing 14.09(B)(1) and whether Plaintiff's malaise and fatigue symptoms meet or equal Listing 14.09(B)(2).[10]  To the extent that the ALJ concludes that Plaintiff's fibromyalgia does not meet or equal Listing 14.09(B) or (D), she should provide a rationale that clearly articulates which provisions are not met, and why.  Accordingly, the Court will **GRANT** Plaintiff's appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.

### B.    Remand for Benefits

Plaintiff maintains that the proper remedy is for the Court to remand solely to calculate benefits.  Br. at 24.  In making the determination whether to remand for further proceedings or solely for the ALJ to calculate benefits, the Court considers two factors:  (1) whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and (2) whether the administrative record of the case has been fully developed and substantial evidence

---

[10] And, although Plaintiff herself does not focus on 14.09(D), it appears that it has significant overlap with 14.09(B)(2) as each require a finding of at least two constitutional symptoms or signs.

on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Bieri v. O'Malley*, No. 23-1919, 2024 WL 4680672, at \*6 (M.D. Pa. Nov. 5, 2024) (citations omitted).

"Courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands." *Michelle N. v. Kijakazi*, No. 22-10, 2022 WL 10048869, at \*5 (D.N.J. Oct. 17, 2022) (citing *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391-92 (M.D. Pa. 2019)). This case—over ten years old—certainly has been delayed. Plaintiff previously appealed the ALJ's initial decision, which was remanded to the ALJ by the Appeals Council due to errors committed by the ALJ, and now Plaintiff has appealed the ALJ's final decision to this Court, and this Court is remanding this case back to the ALJ again. Other courts have remanded solely to calculate benefits in similar circumstances. *See, e.g.*, *Brownawell v. Comm'r of Soc Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (awarding benefits after a delay of eight years and two prior remands); *Podedworny*, 745 F.2d at 221 (awarding benefits after a delay of over five years and after two appeals).

Upon review of the Record, however, it appears apportioning fault for the delays in this action is complicated. For example, Plaintiff previously filed an untimely request for a hearing following her initial determination, which she attributed due to difficulties recovering following her pregnancy. R. 153. Plaintiff then did not appear for that hearing because she had to take her child to the hospital that day due to food poisoning. *Id.* 212-19. Then, the SSA sent Plaintiff a notice that a new hearing would be scheduled, but that notice was sent to the wrong address and Plaintiff did not receive it. R. 220-31. In light of the mixed fault for the delays in this action, the Court turns to the second factor—the merits of Plaintiff's case.

There is no doubt that the Record in this case has been fully developed. However, as explained *supra*, the ALJ's failure to adequately explain why Plaintiff's fibromyalgia impairments

16

do not either independently or in combination with her other impairments meet or equal Listing 14.09(B) signals that it is for the ALJ—and not the Court—to make the determination in the first place. The Court is persuaded by the reasoning in an opinion from another district, which "expresse[d] no view on whether Plaintiff's impairments satisfy Listing 14.09B, given that only the ALJ may weigh conflicting evidence and make credibility determinations." *Ashley H. v. Kijakazi*, No. 22-3035, 2023 WL 6200294, at \*5 (D. Md. Sept. 22, 2023). As that court explained, "it is not this Court's 'province to . . . substitute [its] judgment' for that of the ALJ." *Id.* at \*4 (quoting *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)). This Court will follow suit. Accordingly, the Court declines to remand this action solely for benefits because it is for the ALJ to determine whether Plaintiff's impairments meet or equal Listing 14.09(B) or (D).

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion. An appropriate Order follows.

Dated: March 13, 2026

_____
Evelyn Padin, U.S.D.J.

17